HUBERT NORRIS, Plaintiff-Appellant, *v.* THE COMMISSION ON HUMAN RELATIONS *et al.*, Defendants-Appellees.

(No. 59565;

First District (3rd Division)—February 6, 1975.

Allan R. Fierce, of Cook County Legal Assistance Foundation, Inc., of Evanston, for appellant.

William J. Scott, Attorney General, of Chicago, (A. Zola Groves and Paul J. Bargiel, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Hubert Norris, filed a complaint pursuant to the Administra-

tive Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) to review his discharge from a position with the defendant, Illinois Commission on Human Relations (sometimes referred to as "ICHR"), by the defendant, Illinois Civil Service Commission. Plaintiff appeals from the order of the circuit court affirming his dismissal. The pertinent facts follow.

On August 17, 1970, plaintiff was employed as Director of the Housing Department of ICHR. ICHR was comprised of four departments; Community Services, Police-Community Relations, Education, and Housing, each headed by a director. Policy objectives are formulated through an Executive Committee consisting of the Executive Director and the four individual department directors. At all times herein Mrs. Beatrice Young was the Executive Director of ICHR.

Plaintiff was a certified employee with the position title of Human Relations Consultant III. The Department of Personnel job description for his position provided in pertinent part:

"DISTINGUISHING FEATURES OF WORK:

Subject to administrative approval, plans, develops and directs the State-wide human relations program in the fields of education, community development, communications, housing services, or police and community relations, or plans and directs all phases of the commission's human relations program in a branch office; exercises major responsibility for effectively working with State and local human relations organizations or education officials on problems of racial, religious, or ethnic discrimination and prejudice.

ILLUSTRATIVE EXAMPLES OF WORK:

\*  \*  \*

3. Plans, organizes, and directs a comprehensive program designed to assure the achievement of full equality of opportunity in housing; consults with representatives of the housing industry, local civil rights commissions and other interested groups relative to the development of programs designed to eliminate discrimination in housing.

\*  \*  \*

9. Performs other duties as required or assigned."

The job description was written prior to enactment of the commonly designated anti-solicitation act (Ill. Rev. Stat. 1969, ch. 38, par. 70—51, and ch. 127, par. 214.4—1), although prior to employment plaintiff was informed that implementation of the law would be included in his duties as Housing Director. The duties under the new law required compiling lists of homeowners who did not wish to be solicited for the sale of their home, the publication of booklets containing such names and mail-

ing such lists of real estate brokers. Thereafter, any complaint by a listed homeowner of a subsequent solicitation by such broker was to be documented by plaintiff and referred to the Attorney General's office for possible prosecution. Plaintiff was not assigned any assistants or clerical help on a regular basis, although temporary clerical help was occasionally provided to assist in the antisolicitation functions.

On August 6, 1971, plaintiff was involved in a heated argument with Mrs. Young in her office. In the following days a dispute existed between them as to whether the argument had culminated in the resignation of plaintiff. The dispute was resolved in favor of plaintiff by the Department of Personnel which ruled that he had not resigned. Thereafter, Mrs. Young suspended plaintiff, pending discharge, which was followed by written charges filed with the Illinois Civil Service Commission. The formal charges against plaintiff may be summarized as follows:

"A. Failure to adequately perform the duties in the job description, including (1) work with the Community Services Department in developing necessary housing services; and (2) work with Local Human Relations Commissions, their directors, as well as real estate brokers.

B. Negligent in administering the Anti-Solicitation Law, in
  (1) removing original complaint files from office without informing supervisor or Attorney General as to their disposition, resulting in delay in prosecution of alleged violators;
  (2) unable to provide necessary information in an efficient manner to the Assistant Attorney General for prosecutions;

C. Failure to comply with office practices set by the Executive Committee in
  (1) scheduling a trip to Denver, Colorado on May 25-29, 1971, without prior approval of his supervisor;
  (2) not accounting for his work time on a regular basis as required by ICHR and auditor for fiscal purposes;
  (3) entering hospital for observation February 15-19, 1971, without advance notice to supervisor, and again for extended hospitalization absence ending September 3, 1971;
  (4) scheduling trip to Indianapolis, Indiana on August 8-13, 1971, without prior approval of supervisor; and

D. Use of abusive and threatening language to Executive Director on August 6, 1971."

A hearing on the charges was held on December 22 and 23, 1971, before a hearing officer of the Illinois Civil Service Commission. Six witnesses appeared against the plaintiff.

Mrs. Young testified that on August 6, 1971, she summoned plaintiff to her office to discuss the inordinate amount of time he had spent at the Post Office mailing anti-solicitation lists, and a trip to Indianapolis which she had learned he scheduled without prior approval. Although she admitted having used the word "damn" a few times, she stated that plaintiff directed a series of abusive profanities at her, stormed around her office, pounding his fist, and finally threatened to destroy her career. She identified a letter found in plaintiff's desk which confirmed his registration for an August 1971 conference in Indianapolis. Mrs. Young testified that it was customary for staff members to make tentative inquiries as to out-of-state travel without her approval, but not to make firm travel commitments. She had warned plaintiff of the necessity for prior approval after his return from an unauthorized trip to Denver in May 1971. Mrs. Young further testified that while a job description did exist, upon his employment plaintiff was told to formulate his own job description within the framework of the existing one. She stated that plaintiff's anti-solicitation work came within the required, or assigned, additional duties in the existing job description; that he had been instructed as to the proper documentation of the anti-solicitation complaint files; that she knew it was part of plaintiff's work to deliver the files to the Attorney General's Office, but added that plaintiff sometimes took files from the office and did not deliver them to the Attorney General. She identified letters found in plaintiff's desk from two real estate brokers complaining that their previous inquiries to plaintiff had gone unanswered. Mrs. Young also testified that the plaintiff was late with his work time sheets on several occasions.

Morton Friedman, an assistant Attorney General in charge of prosecuting anti-solicitation violators, testified that he had instructed plaintiff in the manner in which complaint files were to be documented before being sent to his office for possible prosecution. He stated that many of the files had to be returned because of incomplete or faulty documentation, and identified two complaint files which were returned to plaintiff. In one, the solicitation complained of had occurred prior to the soliciting broker's having been sent the homeowner list, and in the second, a person other than the soliciting broker had signed the return receipt for the list.

Harold Goldmeier and Janice Patton, Executive Directors, respectively, of the Skokie and Rockford Human Relations Commissions, testified that in their dealings with plaintiff he exhibited negative attitudes and insensitivity toward public housing needs of their respective communities.

Ivan Levin, Director of the Springfield office of ICHR, testified that plaintiff's monthly reports indicated that he did not follow through on procedures which were outlined when he assumed his duties and that no programs of any lasting value were initiated by plaintiff.

James Perrone, Director of the Community Services Department of ICHR, testified that he talked with plaintiff before he was employed and explained what was expected of him, but had almost no communication with plaintiff, although their respective departments required close coordination, and that plaintiff told him they were both very busy and that it was difficult to find time to discuss common issues.

Plaintiff testified that the August 6, 1971, argument grew out of Mrs. Young's refusal to approve a planned trip to Indianapolis; that she thereafter asked for his resignation which he refused to submit, and that the argument turned to Mrs. Young's political aspirations, at which point she told him he was fired. He further testified that no firm confirmations were made to attend an Indianapolis conference and that the correspondence found in his desk was only a response to a tentative inquiry; that he always completed his time sheets promptly and on two occasions had to submit duplicates after Mrs. Young's secretary had lost the originals. Plaintiff further testified that the duties in implementing the anti-solicitation law grew dramatically, and because of the absence of clerical help he was required to spend 85 to 90 per cent of his time on such matters; that Mrs. Young would not provide him with clerical help "by and large," although temporary help was occasionally hired and the secretary of the Community Services Department would spend part of her time helping him; and that because their schedules conflicted he and Mr. Perrone had difficulty communicating with each other. Plaintiff testified that Mrs. Young insisted that incomplete solicitation complaint files be sent to the Attorney General because she feared criticism from community groups that her office was holding back the complaints; that she reviewed every solicitation complaint file before it was sent to the Attorney General; that plaintiff attempted to inform Mr. Friedman that Mrs. Young caused inadequately documented files to be sent to him, but that he never expressly told him so. He stated that Harold Goldmeier had suggested that public housing might be introduced in Skokie, but that he told Goldmeier the concept was probably unworkable due to the area's low vacancy rate and other factors. He testified that Janice Patton became upset with him at a dinner party because he referred to scattered-site housing as public housing and that he had not realized how sensitive she was on the subject and apologized to her the following day.

The hearing officer found plaintiff not guilty of the charges of failure to notify his supervisor in advance of the hospitalization on February 15, 1971, and again on September 3, 1971, and of scheduling the trip to Denver without prior approval. However, the hearing officer found plaintiff guilty of all the other charges, stating that in the aggregate they constituted cause for plaintiff's discharge. On March 15, 1972, the Civil

Service Commission adopted the findings of the hearing officer and ordered the discharge of plaintiff.

On May 4, 1972, plaintiff filed a complaint pursuant to the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*). On May 15, 1973, he filed a specification of errors relied upon for reversal, contending that the findings of the Civil Service Commission were contrary to the manifest weight of the evidence, and further, that the formal written charges are arbitrary and unreasonable. Following a hearing without a jury the trial court affirmed the decision of the Civil Service Commission. Plaintiff then filed a motion under section 12(3) of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 275(3)) for the court to make written findings of fact or to state the provisions of the law upon which its judgment is based as to each of the errors specified in the specification of errors. The trial court denied the motion, stating orally that the only finding required was whether the order of the Civil Service Commission was against the manifest weight of the evidence. Plaintiff's appeal is from the order of affirmance and the denial of the motion for written findings.

## I.

■■ Plaintiff first contends that the trial court erred in limiting its review to the adequacy of the evidence and failed to address the additional issues raised that the charges were legally insufficient, arbitrary and unreasonable. Plaintiff's argument is predicated on the denial of his motion in which he incorporated the specification of errors previously filed and requested written findings of fact or provisions of law to be made as to each specification raised. Section 9(a) of the Administrative Review Act does not provide for the filing of such specification upon the initiative of the plaintiff. Plaintiff's motion was not denied because it incorporated an unauthorized pleading. The trial court denied the motion for the stated reason that the only finding required was whether the administrative decision was contrary to the manifest weight of the evidence.

■■ Section 12(3) provides that on motion of either party the trial court shall make findings of fact or state the provisions of law upon which its judgment is based. The nature of the specification of errors incorporated into the plaintiff's motion which was denied indicates that the trial court's statement concerning the manifest weight of the evidence did encompass and resolve the allegations contained in the specification of errors. Without exception, all of the specifications incorporated into the motion are directed not at the arbitrariness, unreasonableness and legal insufficiency of the charges per se, but rather at the alleged absence of evidence to prove those charges.

## II.

■■ The remaining contentions raised by plaintiff on appeal are similarly based upon the sufficiency of the evidence. In essence, the specification of errors challenges the findings of fact as to each charge, and not the charges. We therefore hold that the trial court properly restricted the scope of its review in keeping within the limitations of section 11 of the Administrative Review Act, that the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. (Ill. Rev. Stat. 1971, ch. 110, par. 274.) Such findings of fact may only be set aside if found to be contrary to the manifest weight of the evidence. (*Fenyes v. State Employees' Retirement System* (1959), 17 Ill.2d 106, 160 N.E.2d 810.) The trial court did not err in so restricting its review. Moreover, our consideration of the remaining contentions will be made in accordance with that principle of administrative review.

## III.

■■ Plaintiff next contends that it was arbitrary and unreasonable to base the discharge on a failure to adequately perform the duties listed in the job description for his position. He argues that the job description was outdated and inaccurate and that one specification was failure to perform a duty not contained in the job description. We disagree. The duties assigned to plaintiff under the anti-solicitation law arose after the applicable job description was written. The last illustrative example of work in the job description reads: "9. Performs other duties as required or assigned." Mrs. Young testified that in her opinion plaintiff's activities in implementing the anti-solicitation law came within the foregoing illustrative example. A job description written so narrowly as to preclude all but expressly enumerated functions would be of dubious value, although plaintiff did ignore the final illustrative example and argues that such an overly narrow reading of a job description is required. The evidence does not indicate that the job description was considered outdated or inaccurate within the ICHR, when plaintiff was first told to formulate his own job description within the framework of the existing one on file with the Department of Personnel. While he was given the freedom to incorporate his own experiences into the basic job description for his position, it does not follow that the basic description was considered outdated or inaccurate. The broad provisions contained in the existing description remained operative to outline the primary duties of the position.

## IV.

■■ Plaintiff further contends that the charge of failure to adequately

perform job description duties includes the failure to work with the Community Services Department in developing necessary housing services, a duty not contained in the job description. While the job description applicable for a Human Relations Consultant III does not expressly require coordination between the various departments of ICHR, that requirement is necessarily implicit. The job description illustrates the duties of the Housing Director as including the planning, organizing and directing of a comprehensive program designed to assure the achievement of full equality of opportunity in housing. The establishment of a comprehensive program in housing necessarily includes close coordination between the departments of ICHR which deal with overlapping subject matters. Moreover, James Perrone testified that he informed plaintiff at the time of his employment of the need for communication between their two departments, and in spite of repeated emphasis, no effort at developing efficient coordination was seriously undertaken by plaintiff. We hold that the general charge of failure to adequately perform the duties in the job description, and specifically, the failure to adequately work with the Community Services Department, are neither arbitrary nor unreasonable. Further, the findings of fact that plaintiff was guilty of the inadequacies as charged are not contrary to the manifest weight of the evidence.

## V.

Plaintiff also contends that it was arbitrary, unreasonable and against the manifest weight of the evidence to have based his dismissal on a claim of negligence in the administration of the anti-solicitation law. Two specifications are listed: First, that plaintiff caused delays in the prosecution of violations by removing the original complaint files without informing either his supervisor or the Attorney General's office; and second, that plaintiff failed to provide necessary information in an efficient manner to the assistant Attorney General in charge of such prosecutions. In defense, plaintiff points out that Mrs. Young testified that she knew it was part of his duties to transmit original complaint files to the Attorney General's office and therefore, the specification is unreasonable and unsupported by the evidence. Mrs. Young testified that she was aware of plaintiff's responsibility to transmit original complaint files to Morton Friedman, but added that plaintiff occasionally removed such files but did not give them to Mr. Friedman. She related an instance when a missing complaint file was located in plaintiff's automobile.

Morton Friedman testified that prosecutions would only be taken on properly documented original complaint files. He recalled two instances where the prosecutions of alleged violations were delayed because the

original complaint files could not be located at the ICHR office. While plaintiff had the responsibility for transmitting original files to Mr. Friedman, the evidence disclosed other times when original complaint files were removed without any one's knowledge and for purposes other than transmitting them to the Attorney General's office.

■■■ As to the second specification under the general charge, both Mrs. Young and Morton Friedman testified that plaintiff had been instructed in the proper documentation of the complaint files. Mr. Friedman testified that many of the original files which he received from plaintiff had to be returned because of faulty preparation, and identified two of such files. Plaintiff offered in defense that Mrs. Young had knowingly ordered him to transfer complaints with faulty documentation because she feared pressure from special interest groups. Mrs. Young denied plaintiff's accusation. Morton Friedman testified that he had several conversations with plaintiff and Mrs. Young concerning the faulty complaints received and that neither plaintiff nor Mrs. Young ever told told him that complaints with improper documentation were being sent on Mrs. Young's direction. The finding that inadequately documented complaint files were being forwarded by plaintiff is amply supported by the evidence. The question of who was responsible for the files being sent was resolved by the hearing officer who accepted the testimony of Mrs. Young. The hearing officer, siting as a trier of fact, was entitled to weigh the testimony of the witnesses and to judge their credibility. There must be something more than conflicting testimony to warrant a conclusion that a finding of fact is erroneous. (*Crepps v. Industrial Com.* (1949), 402 Ill. 606, 85 N.E.2d 5.) Here, the general charge and the two specifications are neither arbitrary nor unreasonable, and the findings of fact are not contrary to the manifest weight of the evidence.

## VI.

■■ Plaintiff next contends that it was arbitrary, unreasonable and not a just cause for dismissal to charge him with the failure to comply with office procedures in scheduling a trip to Indianapolis without prior approval of his supervisor. A State travel regulation dealing exclusively with reimbursement for travel expenses was introduced as the office procedure which plaintiff had violated. The regulation is applicable to all State agencies and provides that prior approval is required if reimbursement will be sought for out-of-State travel expenses in excess of 50 miles beyond the State boundaries. Other than denying reimbursement, the regulation does not prohibit out-of-State travel without prior approval of a supervisor. However, the specification concerning the Indianapolis trip was under the general charge that plaintiff failed to comply with office

practices set by the Executive Committee on ICHR, not a charge that he had violated state travel regulations. Mrs. Young testified that the ICHR procedures permitted staff members to make tentative inquiries for out-of-State travel without her authorization but that her prior approval was required before making firm travel commitments. She testified that plaintiff had taken an unauthorized trip to Denver, Colorado in May 1971. Upon his return he sought reimbursement which Mrs. Young authorized, but she warned him that he was not to take any similar trip in the future without securing her approval. Following the argument of August 6, 1971, Mrs. Young discovered a letter in plaintiff's desk confirming his registration at an Indianapolis conference later that month, together with a receipt showing that the $200 tuition fee for the conference would be billed to ICHR. We conclude that the particular specification is neither arbitrary nor unreasonable and that the evidence was sufficient to support the finding that plaintiff had violated the ICHR travel procedures.

## VII.

■■ Plaintiff's final contention is that just cause for discharge does not arise from a State employee directing abusive and threatening language to his supervisor. This contention is without merit. Plaintiff's position was one of major responsibility. As a department head he was a member of the Executive Committee which formulated the policy directives for ICHR. The relationship which plaintiff maintained with the Executive Director who was also his immediate superior was one of importance to the overall effectiveness and efficiency, not only of plaintiff's department, but for the entire ICHR. The need for inter-agency discipline alone rebuts plaintiff's claim that his actions of August 6, if sustained by the evidence, were not a proper cause for discharge. The testimony concerning the events of that date primarily raised a question of credibility which was for the hearing officer to resolve. (*Crepps v. Industrial Com., supra.*) The finding of fact that plaintiff was guilty of directing abusive and threatening language to Mrs. Young is not contrary to the manifest weight of the evidence.

## VIII.

■■ Plaintiff, having completed his period of probationary employment prior to the filing of the instant charges, could only be dismissed for cause under the provisions of the Illinois Personnel Code (Ill. Rev. Stat. 1971, ch. 127, par. 63b108b.16). Proper cause for discharge has been judicially defined as some substantial shortcoming which renders an employee's continuance in employment in some way detrimental to the discipline and efficiency of the service and something which the law and

a sound public opinion would recognize as a good cause for his no longer occupying the position. *Etscheid v. Police Board* (1964), 47 Ill.App.2d 124, 197 N.E.2d 484.

The hearing officer concluded that the charges of which plaintiff had been found guilty constituted in the aggregate proper cause for his dismissal. That conclusion was subsequently adopted by the full Civil Service Commission. In this appeal our review has established that all of the charges and specifications of which plaintiff made complaint constitute adequate cause for dismissal, and that the findings of fact are supported by sufficient evidence and are not against the manifest weight of the evidence.

## IX.

■■ The administrative record clearly reflects a series of substantial shortcomings which would render plaintiff's continuance as Director of the Housing Department detrimental to the discipline and efficiency of the ICHR. Plaintiff's discharge was proper. The judgment of the circuit court is accordingly affirmed.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.