THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 501, Plaintiff-Appellee, *v.* ILLINOIS COMMUNITY COLLEGE BOARD *et al.*, Defendants-Appellants.

Fifth District   No. 76-189

Opinion filed November 17, 1976.—Rehearing denied December 10, 1976.

Donald D. Zeglis, of Momence, for appellants.

John P. Wham, of Wham & Wham, of Centralia, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

This is an appeal by the Illinois Community College Board from an order of the circuit court of Clinton County, which, on administrative review, reversed the Board's decision to disconnect certain territory from the Kaskaskia Community College District and annex it to the Lake Land Community College District. On appeal the sole issue for our determination is whether the court erred in finding the Board's decision to be against the manifest weight of the evidence.

Section 6—5.3 of the Public Community College Act (Ill. Rev. Stat. 1975, ch. 122, par. 106—5.3) sets out a procedure whereby a territory on the border of one community college district may be disconnected from that district and annexed to another district to which it is contiguous. Basically, the statute requires that two-thirds of the territory's resident voters file a petition seeking disconnection and annexation. The statute also provides a procedure whereby objectors to the petition may obtain a

public hearing, at which the Board or its hearing officer is to hear evidence as to school needs and conditions of the petitioning territory and the adjacent area. The hearing officer is to determine the legal sufficiency of the petition and report a summary of the testimony to the Board. If the Board finds the petition sufficient and determines that disconnection and annexation is in the best interests of the schools in the general area and the educational welfare of the students in the territory, it is to approve the petition and direct the appropriate regional superintendent to enter an order effecting the prayer of the petition. Section 6—5.9 of the same act makes the decision of the Board an "administrative decision" reviewable in accordance with the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*).

The territory in question is located within Vandalia Community Unit School District No. 203. It is about 20 square miles in area and is contiguous to both the Kaskaskia and Lake Land districts. The Kaskaskia campus is in Centralia; the Lake Land campus is near Mattoon.

The petition to disconnect contained the signatures of 134 resident voters, representing more than two-thirds of the total 187 voters alleged to reside in the territory. The petition recited, *inter alia*, that "the disconnection and annexation will make community college educational opportunities more readily available to the residents of the territory affected," and that "the residents of the territory * * * believe, as evidenced by the prayer of this petition, the disconnection and annexation to Lake Land College is in the best interests of the schools in the area and the educational welfare of the students in the territory * * *." A timely petition for a public hearing on the proposed disconnection was also filed with the Board, and such a hearing was held after publication of the statutorily required notices.

At the hearing, six residents of the territory and the president of Lake Land College testified in support of the petition. Elmer Finley testified that he had attended Kaskaskia Community College in 1969, and that in his opinion, because of the better condition of the roads from the territory to Lake Land College, annexation to that district would make educational opportunities more readily available to the residents. He was also of the opinion, based on conversations with high school classmates who had attended Lake Land, that "Lake Land has a better educational setup as far as instructors, class rooms, and class room facilities than Kaskaskia does * * *." Earl Ledbetter testified that he felt the educational welfare of the students and residents of the territory would be better served at Lake Land College. He attempted to testify as to the taxation variation between the two districts, but this testimony was cut off by the hearing examiner as irrelevant. Ralph Radcliff testified that the highway from the territory to Lake Land was much better than the roads to Kaskaskia. He

said that he had no other reasons to favor Lake Land, other than "the wishes of the majority of the people." Harmon Doyle testified that all of his neighbors who were going to college were attending Lake Land, and that his daughter would go there regardless of which district the territory was placed in because of the bad roads to Kaskaskia. In his opinion annexation to Lake Land would make community college educational opportunities more readily available because of the better roads. Gertrude Scribner testified that she had visited both colleges and would definitely want her children to go to Lake Land. She said that her children had objected to Kaskaskia, which they referred to as the "yo-yo" school. She had passed the petition, and had no trouble obtaining the 134 signatures. She would not want her children driving the roads to Kaskaskia. She testified that she had been through Lake Land College and found it much more desirable than Kaskaskia; "it really gives you a lift to drive up there and walk through that school." She said that she herself hoped to take courses at Lake Land eventually. Robert Webb, president of Lake Land College, spoke on behalf of the board of trustees of Community College District No. 517. He testified that "the principle of self-determination, by which citizens can exercise local option in joining a community college district, is consistent with the Community College Act and with the past practices of the Illinois Community College Board." He cited a recent Cook County Circuit Court decision which he said reaffirmed this principle. He said that the signatures of 134 resident voters to the petition here was overwhelming evidence of the wishes of the residents. He testified that Lake Land had adequate facilities to serve the territory, and that approval of the petition would allow the continuation of a comprehensive program currently operated by Lake Land College at the State correctional institution located within the territory. A letter from Mrs. Norma Sminchak, who was unable to attend the hearing, was authenticated and admitted into evidence in support of the petition. Finally, Ron Finley testified that during the two years he had attended Kaskaskia Community College he had stayed in Centralia because of the poor condition of the roads. On bad days, he testified, several commuting students would end up in a ditch beside the road. He testified that, although Kaskaskia was closer to the territory than Lake Land, it took about 60 minutes to drive to Kaskaskia and only about 50 minutes to drive to Lake Land. He confirmed Mrs. Scribner's statement that the students referred to Kaskaskia as the "Yo-Yo University." He had taken one night course with an instructor from Lake Land, and found him superior to those he had at Kaskaskia. He would rather have attended Lake Land than Kaskaskia.

Five witnesses testified in opposition to the disconnection of the territory from the Kaskaskia district, only one of whom was a resident of

the territory.[1]    The first witness was Edward Taylor, president of the board of education of Vandalia Community Unit District No. 203. He testified that the school board was opposed to dividing the school district so that part would be in one community college district and part in another. Disconnection of the territory would seriously affect the adult education classes conducted by Kaskaskia Community College in cooperation with District 203. The school board, he testified, was of the opinion that Kaskaskia offered the best educational opportunities for the district's graduates. He said that Lake Land College was impossible to commute to on a part-time basis. He did not live in the territory in question, and there were no members of the Vandalia school board from that territory. Bill Brown, the only resident of the territory to oppose the petition, testified that he thought "both are tremendous schools," that one of his daughters had commuted to Kaskaskia, that his wife had taken an adult education class there, and that another daughter was currently enrolled in a cooperative program between Kaskaskia and Greenville College, "and she loves the school and loves the facilities and everything." He also said that he thought the adult education classes offered by Kaskaskia at Vandalia high school were "tremendous," and that he hoped to be able to participate in some of them. He was not familiar with the curriculum at Lake Land College. Mrs. Agusta Corona testified that she was taking a Kaskaskia adult education course at Vandalia high school and had found it very satisfactory. She was not a resident of the territory seeking annexation to the Lake Land district. Margaret Ellison was also participating in the adult education program at Vandalia high school, and was "very pleased" with her sewing course. She was not a resident of the territory. Finally, Herschel Kasten, chairman of the board of Kaskaskia College, encouraged the Community College Board to leave the territory in the Kaskaskia District.

    After the hearing, the hearing examiner submitted his summary of the testimony to the Board. Although he found the petition legally sufficient, he concluded that the testimony of the majority of the witnesses was not addressed to the availability of community college educational opportunities. A "staff report" recommended that the Board disapprove the petition, stating that no persuasive arguments had been made by the petitioners to show that detachment from the Kaskaskia district and annexation to Lake Land would increase educational opportunities for the residents of the territory. Nevertheless, by a 5-2 vote, the Board made the statutorily    required    determinations    "(1)    that    disconnection    and

---

[1] The statute is somewhat ambiguous as to who may testify at the hearing: "° ° ° any resident of the territory described in the petition or any community district affected thereby ° ° °." We will assume for the purposes of this opinion that the legislature intended that any *resident* of any affected community district might testify.

annexation will make community college educational opportunities more readily available to the residents of that territory and (2) the disconnection from the community college district of which the territory is presently a part will not reduce the population and equalized assessed valuation of the remainder of that district below that required for original organization," approved the petition, and directed the entry of an order effecting the prayer of the petition.

Subsequently the board of trustees of the Kaskaskia district filed a complaint for administrative review in the circuit court of Clinton County, pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*). After an examination of the record, the court found that the ruling of the Illinois Community College Board granting the petition was contrary to the manifest weight of the evidence and ordered that it be overruled and held for nought. This appeal followed.

Section 6—5.3 of the Public Community College Act has not been previously construed by a reviewing court. It is not a model of lucid draftsmanship. As we read the statute, the legislature contemplated a bifurcated procedure. First, "on the basis of its own study or at a public hearing," the Board must determine whether the petition is "sufficient": that is, whether it contains the requisite signatures and description of the territory, whether the required notices have been published, and whether disconnection and annexation will make community college educational opportunities more readily available to the residents of the territory without reducing the population and equalized assessed valuation of the remainder of the district from which the petitioners seek to disconnect below that required for original organization. Next—only after the preliminary determination of statutory sufficiency—the Board must rule on the petition. This final decision is to be based on whether or not "the prayer of the petition is in the best interests of the schools in the general area and the educational welfare of the students within the territory." No criteria for determining what is in the best interests of area schools are set out in the statute. The legislature evidently intended to commit this somewhat nebulous determination to the sole discretion of the Board. Presumably, a petition could overcome the preliminary hurdle of "sufficiency," and still fail upon a finding by the Board that disconnection and annexation were not in the best interests of the schools in the general area.

In this case, it was undisputed that the petition was signed by two-thirds of the resident voters of the affected territory, that the territory was properly described, that the required notices were timely published, and that disconnection and annexation would not reduce population and valuation of the remainder of the Kaskaskia district below the critical

levels. Thus the only factual question to be resolved in the first stage of the statutory procedure was that of more ready availability of community college educational opportunities to the residents of the territory. Although the hearing examiner was of the opinion that most of the testimony at the public hearing was not relevant to this question, he did conclude that the petition was sufficient. The Board concurred in this determination of sufficiency, making the explicit finding that disconnection of the petitioning territory from the Kaskaskia district and annexation to Lake Land would make community college educational opportunities more readily available to residents of the territory. As this was the only factual question presented by the record, it must have been this determination that the circuit court found to be contrary to the manifest weight of the evidence.

The scope of judicial review of such a determination is severely circumscribed. Upon administrative review by the circuit court under the Administrative Review Act, conclusions of the administrative agency on questions of fact are deemed to be "prima facie true and correct." (Ill. Rev. Stat. 1975, ch. 110, par. 274.) The circuit court is empowered to disturb such conclusions only if they are against the manifest weight of the evidence; if there is some competent evidence in the record sufficient to support the agency's conclusion, it should be upheld. (*Cobin v. Pollution Control Board*, 16 Ill. App. 3d 958, 307 N.E.2d 191 (5th Dist. 1974).) A particular administrative finding may not be adjudged against the manifest weight of the evidence unless, from the record, it appears that an opposite conclusion is clearly evident. The mere fact that an opposite conclusion is reasonable or that the circuit judge might have ruled differently will not justify reversal of the administrative findings. (*Petraitis v. Board of Fire & Police Commissioners*, 31 Ill. App. 3d 864, 335 N.E.2d 126 (1st Dist. 1975), and cases cited therein.) There must be something more than conflicting testimony to warrant a conclusion that a finding of fact is erroneous. (*Norris v. Commission on Human Relations*, 26 Ill. App. 3d 528, 325 N.E.2d 818 (1st Dist. 1975).) Neither the trial court nor this court may reweigh the evidence and substitute its judgment for that of the administrative agency. (*Davern v. Civil Service Com.*, 47 Ill. 2d 469, 269 N.E.2d 713 (1970).) This is particularly true where an administrative body is vested with discretion by the legislature. *Community Unit School District No. 1 v. County Board of School Trustees*, 11 Ill. App. 2d 561, 137 N.E.2d 874 (2d Dist. 1956).

There can be no doubt that the Board's preliminary finding on the factual question of availability had support in the record. Testimony at the public hearing, as summarized above, indicated the residents' concern about road conditions between their homes and Kaskaskia Community College. Evidence of safer and faster access to Lake Land College would

by itself, in our opinion, be a sufficient evidentiary basis for the Board's finding. We would note that the statute does not by its terms require the Board to decide this question solely on the basis of evidence adduced at the public hearing, which is designed, after all, to afford *objectors* to the petition an opportunity to put their views before the Board. The question of sufficiency of the petition is to be decided by the Board "on the basis of its own study or at a public hearing." In any event, the court below would not have been justified, under the principles of administrative review outlined above, in disturbing the conclusions of the Board on the question of availability. That conclusion was not contrary to the manifest weight of the evidence.

■■ The Board's final decision to grant the prayer of the petition is, we think, even less susceptible to judicial review than its preliminary determination of the factual question of availability. Our supreme court has repeatedly emphasized that "administrative action taken under statutory authority will not be set aside unless it has been clearly arbitrary, unreasonable or capricious." (*Illinois Coal Operators Association v. Pollution Control Board*, 59 Ill. 2d 305, 310, 319 N.E.2d 782, 785 (1974), and authorities cited therein.) What the court said in a case involving the Savings and Loan Act is equally applicable here:

> "It should be noted that the findings required by the statute * * * are not simple findings of readily ascertainable facts, but represent the application of expert administrative judgment to the evidentiary facts. Such terms as 'need,' 'public convenience and advantage,' 'reasonable probability of the success,' and 'undue injury' are not facts that are susceptible to precise proof or measurement by any satisfactory judicial yardstick. They involve matters of judgment and policy. Under such circumstances, a court may not substitute its judgment for that of the administrative agency * * *." (*Skokie Federal Savings & Loan Association v. Becker*, 26 Ill. 2d 76, 82, 185 N.E.2d 861, 864-65 (1962).)

Here, the terms involving matters of judgment and policy are "best interests" and "educational welfare." The legislature has committed these policy judgments to the discretion of the Board, which has been charged with the responsibility to administer a relatively new educational system in this State. The manner in which the Board carries out the details of policies mandated by the legislature in particular cases must be granted much deference by the courts, which are ill-suited to assay the complex factors involved. See, *e.g., City of Chicago v. Town Underground Theatre, Inc.*, 9 Ill. App. 3d 930, 293 N.E.2d 367 (1st Dist. 1973); *People ex rel. Stephens v. Collins*, 35 Ill. 2d 499, 221 N.E.2d 254 (1966); *Games v. County Board of School Trustees*, 13 Ill. 2d 78, 147 N.E.2d 306 (1958).

■■ Without necessarily adopting the rigid view that in every case the

so-called "principle of self-determination" must prevail, we think that the Board was entitled to give great weight to the views of the 134 resident voters who signed the petition that annexation to Lake Land College would enhance their children's educational welfare. The Board was certainly not required to accept the recommendation of its staff that the petition be denied: the decision was for the Board, not its staff, to make. As there is nothing in the record to indicate that the Board's favorable action on the petition was arbitrary, unreasonable, capricious, or contrary to the manifest weight of the evidence before it, the court below erred in overturning the Board's decision.

For the reasons given, the judgment of the circuit court of Clinton County is reversed, and the order of the Community College Board disconnecting the territory in question from Kaskaskia Community College District No. 501 and annexing that territory to Lake Land Community College District No. 517 is reinstated.

Reversed.

JONES and G. J. MORAN, JJ., concur.