N. JEAN HENG, Plaintiff-Appellant, *v.* JOHN D. FOSTER *et al.*, Defendants-Appellees.

First District (4th Division)    No. 76-859

Opinion filed July 27, 1978.

Carole K. Bellows, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Terry Troy and Neil J. Senk, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, N. Jean Heng, appeals from an order of the circuit court of Cook County entered under the Administrative Review Act. That order affirmed the decision of the Illinois Civil Service Commission (Commission) discharging plaintiff for cause from her certified position as Nurse III with the Department of Mental Health and Developmental Disabilities (DMH). On appeal, plaintiff presents several questions for review, including: (1) whether the discharge order is contrary to the manifest weight of the evidence; and, (2) whether her failure to report certain information regarding the theft of patient files from her place of employment was justified by rules governing patient confidentiality.

We reverse the order of the circuit court and the decision of the Commission discharging plaintiff.

Plaintiff, as a nurse employed by DMH, was assigned to the Little Village Mental Health Center, a community mental health center. At the same time plaintiff was assigned as a consultant to Exit House, a separate facility providing services to former substance abusers. In December 1974, approximately 200 active patient files containing confidential information were taken from Little Village. In April 1975, Roger Dvorak, an employee of Little Village and board member at Exit House, admitted

at an Exit House emergency meeting, in plaintiff's presence, that he had taken the files. Thereafter, written charges were filed by DMH against the plaintiff alleging the following acts of misconduct:

"1. Conduct unbecoming a State employee in that Ms. Heng failed to notify her supervisor or any other person within the Department of Mental Health of the stolen records.

2. Respondent allowed the destruction of approximately 160 patient files by failing to prohibit the destruction of the files by Roger Dvorak, in violation of Mental Health regulations."

At the administrative hearing requested by plaintiff in defense of these charges, Pablo Holquin, the administrator of Little Village, testified that Little Village receives Federal funds and is required by the Federal government to maintain a record system. Records containing personal information and clinical data are also maintained for DMH. In December 1974, approximately 200 active patient files were taken from a filing cabinet at Little Village. The files were reconstructed and Little Village continued to operate.

On the morning of April 11, 1975, Holquin received a call from Roger Dvorak, a mental health specialist at Little Village. Holquin testified that Dvorak was under a great deal of stress; Dvorak said he was on drugs. As a result of this conversation Holquin immediately went to Dvorak's home, where Dvorak admitted to Holquin that he had stolen the patient files. Holquin saw a suitcase containing 37 of the original files which had been taken from Little Village. The suitcase also contained prescription pads and psychotropic drugs. Holquin advised Dvorak to get legal counseling and psychiatric treatment. He asked Dvorak to resign his position at Little Village, which Dvorak did on April 15, 1975. At the time the subsequent administrative hearing was held, Dvorak was under treatment at Michael Reese Hospital and unavailable to testify.

Holquin stated that Little Village and Exit House are separate agencies that have a working relationship outlined in a written agreement. Under this agreement Little Village provides some training and consultative services to Exit House staff members. In addition, plaintiff had been assigned to divide her time evenly between the Exit House program and Little Village. Holquin testified that plaintiff's responsibilities at Exit House included consulting and planning but not necessarily participation in clinical services. However, he acknowledged that plaintiff had begun her relationship with Exit House pursuant to an agreement entered into under his predecessor at Little Village. He accepted and continued the relationship but never observed plaintiff in the performance of her duties at Exit House. Holquin stated that Exit House is partially funded by the Federal government and is guided by Federal guidelines, including the requirements of patient confidentiality.

Plaintiff testified that her duties at Little Village included being co-leader of a therapy group and carrying a regular patient caseload. At Exit House plaintiff had direct contact with Exit House patients. A memorandum describing her duties at Exit House stated "[her] role is broadly defined * * * as a fully paid staff resource for the project; her role is *not* * * * limited to those behaviors and responsibilities of the 'consultant' model."

Plaintiff related that she met with Holquin on the evening of April 10, 1975. After that meeting she received a message to attend a meeting at Exit House. When she arrived at Exit House later that evening, a staff meeting was in progress. Roger Dvorak, with whom she was acquainted, was present, as well as Shirley Fedder, plaintiff's supervisor at Exit House, and several members of the staff. Fedder, Dvorak and plaintiff went into Fedder's office. Plaintiff stated that Dvorak appeared distraught and under stress. Dvorak indicated that he had stolen the files from Little Village and stated "I'm a liar, I'm a fraud." Plaintiff responded, "Roger, are you saying you want me for therapy?" Dvorak answered in the affirmative.

Plaintiff then continued the discussion with Dvorak using therapy techniques. Dvorak stated he had several remaining files that he wanted to destroy. Plaintiff suggested that he return the files but Dvorak rejected this suggestion. She asked "Do you want us to turn you in?" But Dvorak insisted they could not because their conversation had been made a therapy session. He indicated that he had been taking several valium and librium daily.

After Dvorak obtained a ride home from a staff member, plaintiff and Fedder checked the Federal guidelines concerning the rules of patient confidentiality. These guidelines, they determined, prevented them from discussing Dvorak's confession with anyone. Plaintiff stated that she viewed her consultation with Dvorak as within her role at Exit House and that she did not notify Holquin or any member of the Little Village staff of Dvorak's confession.

Ruth Charles Edwards, clinical director at Little Village, testified that, to her knowledge, in order for an individual to become a patient at Exit House it was necessary to open a patient file and register the person with a hospital in Springfield. She also stated that rules of confidentiality applicable to Little Village prohibited the release of confidential information without the written consent of the patient.

After reviewing the testimony, the hearing officer recommended that plaintiff be retained in her position as Nurse III. She found that plaintiff had not failed to prevent the destruction of files and further found plaintiff had acted under a good faith belief that Federal guidelines prevented her from breaching the confidentiality of Dvorak's confession

by relating that confession to her superiors. In reviewing the hearing officer's findings and recommended decision, the Commission adopted the findings exonerating plaintiff with regard to the charge of failing to prevent the destruction of files. However, the Commission rejected the hearing officer's finding that no cause for discharge existed by virtue of plaintiff's reliance on the defense of confidentiality. Thus, the Commission unanimously ruled the plaintiff be discharged for cause since the defense of confidentiality did not justify plaintiff's failure to disclose the confession made by Dvorak to her superiors. The decision of the Commission was affirmed on administrative review by an order of the circuit court of Cook County. It is from that order plaintiff now appeals.

OPINION
The Civil Service Commission found, and it is undisputed, plaintiff learned on April 10, 1975, that Dvorak had taken the Little Village files and that plaintiff did not reveal this information to her superiors at Little Village. The decision to discharge plaintiff, however, is based on the Commission's further finding that plaintiff could not reasonably rely on the defense of confidentiality to exonerate her failure to notify her employer of Dvorak's confession. Thus, the only factual question presented concerns the reasonableness of plaintiff's belief that the Federal guidelines applied.

■■ An appellate court will not reverse the decision of the Civil Service Commission if the Commission acted upon evidence fairly tending to sustain the charges and its decision is related to the requirements of the service. (*Munoz v. Civil Service Com.* (1975), 32 Ill. App. 3d 1052, 337 N.E.2d 344, *cert. denied* (1976), 429 U.S. 845, 50 L. Ed. 2d 117, 97 S. Ct. 127.) The reviewing court must determine whether the manifest weight of the evidence supports the findings of the Commission. If the findings of fact are unsupported by substantial, competent evidence the court must not hesitate to grant relief. See *Middleton v. License Appeal Com.* (1974), 20 Ill. App. 3d 534, 314 N.E.2d 596; *Pletcher v. Illinois Racing Board* (1978), 57 Ill. App. 3d 73, 372 N.E.2d 1075.

Plaintiff defends her conduct by claiming she reasonably believed that her actions were restricted by Federal guidelines applicable to Exit House, governing confidentiality of patient information. (Confidentiality of Drug Abuse Patient Records, 38 Fed. Reg. 33744—49 (1973).) These guidelines were promulgated to interpret section 408 of the "Drug Abuse Office and Treatment Act of 1972" (21 U.S.C. §1175 (1976)), which states, in part, as follows:

"(a) Disclosure authorization.

Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance

of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

(b) * * *

(1) The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, * * *."

We do not perceive the question before us as whether the Federal guidelines, in legal contemplation, established an absolute privileged communication between plaintiff and Dvorak, but whether plaintiff had a reasonable belief that the Federal guidelines prevented her from divulging Dvorak's confession. The evidence presented at the hearing and the substance of the Federal guidelines clearly support plaintiff's actions.

The Federal guidelines are applicable to federally funded projects such as Exit House. Dvorak, although plaintiff's co-worker at Little Village, confessed the taking of the patient files to members of the Exit House staff. The confession was made outside the Little Village environment. Dvorak was in an obvious state of distress. He admitted that he regularly took valium and librium. The confession was made in confidence; he asked that his discussion with plaintiff and Shirley Fedder be considered a therapy session. Plaintiff viewed her participation in the discussion as a form of emergency therapy which was within her role as a consultant at Exit House.

The defendants contend that the Federal guidelines are clearly inapplicable because: (1) Dvorak was not a patient at Exit House, since no patient chart had been started for him nor had he been registered; (2) the counseling given Dvorak did not relate to drug abuse; and (3) assuming the guidelines did apply, the requirement of confidentiality was subject to the specific exception of a medical emergency (i.e., the theft of Little Village files), contained in section 408(b)(2)(A). 21 U.S.C. §1175 (b)(2)(A) (1976).

■■ Considering that Dvorak needed assistance immediately and that he related his drug use to plaintiff, we cannot say that plaintiff's evaluation of the Federal guidelines was unreasonable under the circumstances. DMH presented no evidence to rebut plaintiff's account of the events which transpired at Exit House on the evening of April 10, 1975, or to show that plaintiff acted in bad faith. Therefore, we must conclude that the evidence does not support a finding that plaintiff unreasonably relied on the Federal guidelines.

The next question is whether there is a basis in the record for the Commission's finding of cause to discharge plaintiff. The Commission's power to discharge is derived from the statutory standard of "cause" in the Personnel Code (Ill. Rev. Stat. 1975, ch. 127, par. 63b108b.16). This has been defined as "some substantial shortcoming which renders continuance in * * * office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for * * * not longer occupying the place." *Murphy v. Houston* (1929), 250 Ill. App. 385, 394; see *Norris v. Commission on Human Relations* (1975), 26 Ill. App. 3d 528, 325 N.E.2d 818.

The Commission's dismissal order was based on a finding that plaintiff could not reasonably rely on the defense of confidentiality. Although there is no doubt that plaintiff had a duty to her employer and consequently to the patients at Little Village (see *Rolfs v. Pooley Furniture Co.* (1912), 176 Ill. App. 93), the circumstances of this case also created a duty to Dvorak to maintain the confidentiality of his confession. Plaintiff was placed in an extremely difficult position, with which we must sympathize. The highly sensitive and confidential nature of the work which plaintiff performed daily undoubtedly sharpened her sensitivity to the need for confidentiality.

We note that of all the elements inherent in a professional psychiatric relationship, confidentiality is the most sacrosanct and is, indeed, the one element that defines and limits the boundaries of that relationship. To the person seeking psychiatric help, the knowledge that his counselor will not betray the confidence revealed during the course of that relationship is the one elemental principle that reassures and comforts the one seeking aid. It is this principle that re-enforces and strengthens that relationship and thereby creates the atmosphere in which healing can commence within the context of a corrective emotional experience.

In the field of mental health, the element of confidentiality assumes major proportions in that the very process of a patient revealing his intrapsychic thoughts and emotions is considered, in and of itself, a therapeutic experience. Any erosion of this principle would threaten the therapeutic process inherent in psychotherapy. Emphasis on the importance of maintaining the confidential relationship between therapist and patient is a constant companion to the practicing mental health specialist.

When a mental health professional, such as plaintiff, believes in good faith that she is protecting privileged information and is maintaining the confidentiality of her patient source, her actions, as disclosed in the instant case, are clearly understandable and reasonable. We cannot say that plaintiff's conduct, in light of her reasonable reliance on the Federal

guidelines, is the type of conduct which constitutes statutory cause for discharge. The fact that plaintiff advised Dvorak to return the files, which he did the following day, coupled with the fact that no additional files were destroyed, mitigates against its sufficiency.

For these reasons we find that the action taken against plaintiff was improper. Because of our decision it is unnecessary to reach the other contentions raised on appeal.

The decision of the Commission and the order of the circuit court of Cook County are reversed.

Reversed.

JOHNSON, P. J., and ROMITI, J., concur.