[No. 49659-5. En Banc. June 21, 1984.]

THOMAS LOWRY, *Appellant,* v. THE BOARD OF
INDUSTRIAL INSURANCE APPEALS,
ET AL, *Respondents.*

*Don W. Taylor* (of *Fristoe, Taylor & Schultz, Ltd., P.S.*), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Kathleen D. Spong, Assistant,* for respondents.

*M. Lee Price* on behalf of the Washington State Labor Council, Association of Washington Business, and Washington Self–Insurers Association, amicus curiae for respondents.

UTTER, J.—Can a state industrial appeals judge be held insubordinate for failing to follow the directive of his superior, the Board of Industrial Insurance Appeals, when his refusal is based upon a reasonable belief that compliance with the directive will cause him to further an illegal practice? We hold that he cannot. The industrial appeals judge's belief was reasonable in this case because the Board's legal adviser, the Attorney General, had previously indicated that lay representation of parties in contested cases before administrative agencies constitutes the unauthorized practice of law. Under these circumstances, the judge's refusal to follow the directive to enforce the rule did not constitute insubordination.

Appellant, Thomas Lowry, is a member of the Washing-

ton State Bar Association. At the time of suit, he was also an industrial appeals judge for the Board of Industrial Insurance Appeals. The Board is an administrative agency, created by statute, RCW 51.52.010. Its function is to adjudicate appeals taken from orders issued by the Department of Labor and Industries. The Board has rulemaking authority over its own procedures and functions. RCW 51.52.020. Pursuant to this authority, in 1972, the Board enacted WAC 263–12–020(1)(c) which permitted lay representation of parties at all conferences and hearings before the Board, so long as such representatives were employed by a union or employer specifically to handle industrial insurance matters. The rule has since been amended to permit *any* lay person to represent a party at all conferences and hearings.[1]

On December 22, 1981, appellant attended the quarterly staff meeting of the industrial appeals judges. There, WAC 263–12–020(1)(c) was evaluated in light of our decision in *Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 635 P.2d 730 (1981) to determine whether it permits the unauthorized practice of law by laymen. The chairman of the Board noted that there had been no challenge to the rule and instructed the industrial appeals judges to continue its observance.

At the time of this meeting, appellant had cases pending in which both a lay representative and an out–of–state attorney had appeared before him. In early January, appellant, on his own initiative, sent letters to the representative and the attorney scheduling a special meeting to discuss whether the Board's rule would be a defense to a charge of

---

[1] WAC 263–12–020(1)(c) provided:

"Any party to any appeal may appear before the Board at any conference or hearing held in such appeal, either representing himself or by a lay person, or by an attorney at law of his choosing. If no agreement of the parties is reached at such conferences resolving all issues presented, no offers of settlement, admissions or statements made by any party shall be admissible at any subsequent proceeding unless they are independently admissible therein."

unauthorized practice of law. RCW 2.48.180.[2] Appellant sent a copy of each letter to the chairman of the Board. Appellant was thereafter suspended for 3 days without pay for insubordination. Appellant appealed to the Personnel Appeals Board which affirmed the 3-day suspension. Thereafter appellant petitioned for, and received, review in the Thurston County Superior Court which also affirmed. We accepted direct review.

Throughout these actions, appellant's defense to the charge of insubordination has been that compliance with the Board's directive would improperly compel him to assist a lay person in the unauthorized practice of law in contravention of the criminal codes and canons of ethics. *See* RCW 2.48.170 *et seq.*; 9A.08.010; 9A.08.020; CPR DR 1-101, 1-102, 1-103, 3-101(A); CPR EC 1-1, 1-2, 1-4, 1-5, 3-1, 3-2, 3-3, 3-4, 3-5, 3-8.

The Personnel Appeals Board (PAB) assumed the validity of WAC 263-12-020(1)(c) and held that appellant's personal view of its "wisdom . . . [did] not excuse [him] from applying the rule as directed by his superior." PAB Findings, Conclusions and Order, at 3. The Superior Court's review of the Board's order was governed by RCW 41.64-.130 which sets forth five separate standards of review.[3] The standard applicable here is whether the Board's deci-

---

[2]RCW 2.48.180 provides:

"Any person who, not being an active member of the state bar, or who after he has been disbarred or while suspended from membership in the state bar, as by this chapter provided, shall practice law, or hold himself out as entitled to practice law, shall be guilty of a misdemeanor . . ."

[3]RCW 41.64.130 provides, in pertinent part: "[T]he employee may appeal the decision and order of the board . . . to the superior court of Thurston county on one or more of the grounds that the order was:

"(a) Founded on or contained an error of law, which shall specifically include error in construction or application of any pertinent rules or regulations;

"(b) Contrary to a preponderance of the evidence as disclosed by the entire record with respect to any specified finding or findings of fact;

"(c) Materially affected by unlawful procedure;

"(d) Based on violation of any constitutional provision; or

"(e) Arbitrary or capricious."

sion was "founded on an error of law." The Superior Court ruled that the Board's order to suspend appellant was not founded on an error of law, that WAC 263–12–020(1)(c) was not clearly illegal and that appellant had no clear legal right to disobey the Board's order to observe the rule. Neither of these reviewing bodies addressed the reasonableness of appellant's concern that observance of WAC 263–12–020(1)(c) would cause him to violate his professional ethics and some criminal codes.

While failure to obey a superior's order is normally considered insubordination and grounds for disciplinary action, WAC 356–34–010, there are some orders that it is permissible for a public employee to disobey. Such orders are those that are criminal, unsafe, or given in bad faith, *Ashman v. Children's Servs. Div.*, 37 Or. App. 865, 873, 588 P.2d 665 (1978), orders that compel what can reasonably be construed as illegal, *Parrish v. Civil Serv. Comm'n*, 66 Cal. 2d 260, 425 P.2d 223, 57 Cal. Rptr. 623 (1967), and orders that violate the employee's statutory or constitutional rights, *Stephens v. Department of State Police*, 271 Or. 390, 532 P.2d 788 (1975).

Very few cases have considered the force and effect of an order which a public employee believes, if obeyed, would cause him to violate the law. In *Parrish v. Civil Serv. Comm'n, supra,* the California Supreme Court considered a case where the Alameda County Welfare Director had ordered many of his agency's social workers to participate in warrantless, unannounced, early morning searches of the homes of the county's welfare recipients for the purpose of detecting the presence of unauthorized males. The majority of persons whose homes were to be searched were under no suspicion of committing welfare fraud. The appellant in *Parrish* was a social worker who refused to participate in the raids on grounds that he believed this would violate the welfare recipients' constitutional right of privacy. He argued that his superiors were not entitled to compel his participation in illegal searches and that his compliance would subject him to civil liability under 42 U.S.C. § 1983

and criminal liability under 18 U.S.C. § 242. The California Supreme Court noted that appellant had reasonable grounds to believe that the operation was unconstitutional and held that he could not be disciplined for refusing to obey his superior's order. In so holding, it rejected the county's argument that appellant was not entitled to disobey because no definitive authority had declared the searches unconstitutional. Appellant's reasonable belief was sufficient.

Similarly, in *Heng v. Foster,* 63 Ill. App. 3d 30, 379 N.E.2d 688 (1978), the court reversed the Illinois Department of Mental Health and Developmental Disabilities' decision to discharge a nurse for cause after she failed to report a fellow employee's theft of patient files. The nurse in *Heng* had learned of the employee's theft while counseling him during a therapy session. After the session, she consulted the federal guidelines on patient confidentiality which governed her practice and concluded that they foreclosed her from reporting the theft. After reviewing the guidelines, the court held that her belief was reasonable and that she should not be subject to discipline. It did not rule on the scope and effect of the guidelines, however, because it did not think that the question of whether the nurse's belief was reasonable necessitated that inquiry.

Several courts have addressed similar situations where the order given was either illegal or outside the authority of the ordering party. The courts in *Ashman* and *Stephens,* both Oregon cases, looked to the underlying legality of the order before determining that it was proper for the public employee to disobey. Thus, in *Ashman,* the order directing plaintiff to take a civil service job in another city was made in bad faith and was, therefore, illegal under the governing statutes. In *Stephens,* the order forbidding plaintiff to take a leave of absence to participate in military training was in contravention of statutes giving plaintiff a superior right to do so. Similarly, in *Chiappe v. State Personnel Bd.,* 622 P.2d 527 (Colo. 1981), the court looked to the underlying validity of the university food service health and safety

regulation which forbade employees from wearing beards. The court found a rational basis existed to support the regulation which overrode plaintiffs' minimal privacy interest in keeping their beards.

Respondent, in the instant case, relies on the "underlying legality" cases and argues that, because the legality of WAC 263–12–020(1)(c) has not been determined, appellant had no basis upon which to disobey the Board's order. This reasoning ignores both the analysis in the "underlying legality" cases, which is to first determine whether the order was legal as given and then to conclude whether the employee's response was appropriate, and the reasonableness test which has been applied to cases like the one at bar. Respondent also argues that appellant could have taken measures short of disobeying the order, citing *Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 517 P.2d 973 (1974). In *Willard,* a grievance procedure was available, by union contract, for resolution of employer–employee disputes. Respondent gives no indication whether any avenues of dispute resolution were open to appellant here.

The California court in *Parrish* and the Illinois court in *Heng* each asked whether appellants were reasonable in their belief that superior authority foreclosed them from acting in the interests of their employer. The reasonableness element of this test allays the concern, implied by respondent, that public employees will vociferously challenge the authority of their employers should this court allow defiance of an order not clearly illegal to go unpunished. It also allows the conscientious dissenter, with a valid concern based on a reasonable interpretation of authority, to withdraw from what he believes is an illegal or professionally unethical act without fear of sanction where no procedures are available to resolve such a dispute.

We would do individual courage and integrity a great injustice were we to require employees to follow unquestioningly their master's bidding. A person with courage enough to risk employer sanctions, hostile reactions from colleagues, or possible discharge and the disgrace that

accompanies it by disobeying a superior's order on the belief that it would be illegal or unethical for him to act otherwise, is entitled to a determination of the reasonableness of his belief.

The question of the reasonableness of appellant's belief that WAC 263–12–020(1)(c) permitted the unauthorized practice of law and that his enforcement of the rule could subject him to criminal liability and discipline under the code of ethics must be examined. In reaching his conclusion, appellant relied, in large part, upon two Attorney General opinions. The first was a published opinion regarding the legality of appearances by nonattorneys as representatives in administrative proceedings generally. *Administrative Law—Appearance by Non–Attorney in Administrative Proceedings as Constituting Unauthorized Practice of Law,* AGO 6 (1961). The second was an unpublished letter opinion written, in 1972, to the then Executive Director of the Washington State Bar Association in response to his inquiry regarding the legality of WAC 263–12–020.

In AGO 6, the Attorney General surveyed a large body of extrajurisdictional case law which supported the conclusion that representation of parties by laymen before administrative agencies constituted the unauthorized practice of law. Throughout these cases the courts affirmed the exclusive authority of the judiciary to regulate the practice of law and the need to protect the unwary from laymen who generally do not possess the requisite skills to present their cause adequately. The courts identified the practice of law by looking to the character of the acts performed. After reviewing this case law, the Attorney General concluded that every "contested case" before an administrative agency involved the practice of law.

> In such cases all parties are afforded the opportunity to present evidence and argument, an official record is prepared which includes all the testimony and any judicial review is confined to the record thus made. At or in connection with such hearing, provision is made for the issu-

ance of subpoenas and the taking of depositions, rulings are made upon offers of proof and competency, materiality and relevancy of evidence, conferences may be held for the settlement or simplification of the issues, and the right of cross–examination of witnesses is extended to all parties.

AGO 6, at 11.

In his 1972 unpublished letter opinion, the Attorney General affirmed this earlier opinion and applied its analysis to WAC 263–12–020(1)(c). The Attorney General noted that only one state supreme court, California, appears to permit nonattorneys to practice before a workers' compensation board. *See Eagle Indem. Co. v. Industrial Accident Comm'n,* 217 Cal. 244, 246, 18 P.2d 341 (1933) (construing a statute allowing a party to an administrative appeal "to be present at any hearing in person or by attorney or by any other agent . . ." as authorizing representation by nonattorneys). The Attorney General then went through a detailed analysis of the "representative's" responsibilities in conferences, procedures and hearings before the Board and determined that they were, necessarily, the practice of law. The Attorney General concluded that "In our considered judgment [our Supreme Court] would, in any test of the instant question, thus find the procedures presently governing appeals to this board to be such as to necessitate an exclusion of nonattorneys from this practice—except in cases of . . . informal settlement conferences . . ." Exhibit 2, at 8.

Our decision in *Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.,* 96 Wn.2d 443, 635 P.2d 730 (1981) apparently led appellant to agree with the Attorney General's opinion regarding WAC 263–12–020(1)(c). In *Hagan,* we held that the practice of law includes the preparation of documents relating to real estate transactions and rejected the contention that a trend, allowing lay persons to perform some services affecting legal rights, supported the legitimacy of such services. We then reaffirmed our constitutional duty "'to protect the public from the activity of those who,

because of lack of professional skills, may cause injury . . .", *Hagan,* at 447, and held the statute, which authorized such activities by laymen, unconstitutional as an infringement by the legislative branch over an area reserved exclusively to the judiciary.

Extension of the analysis in *Hagan* to this case for resolution of the issue whether appellant's belief was reasonable is not required here and we do not do so. The Attorney General acts as legal adviser to the Board of Industrial Insurance Appeals, RCW 51.52.140. Instead of following the Attorney General's opinion regarding the rule, the Board chose to disregard it. The mere fact that the 1972 letter opinion was never published does not excuse the Board. The 1961 published opinion was available and of direct applicability to the Board's own procedures. The Board need only have asked the Attorney General for an updated opinion to learn its conclusion with regard to this specific rule.

Appellant was thus faced with a statement by his employer's legal adviser that the rule he had been asked to enforce authorized an unlawful practice. His employer had chosen to disregard the Attorney General's opinion because the rule had not yet been challenged. Under these circumstances, appellant's belief that his enforcement of the rule would cause him to violate provisions of the criminal code and Code of Professional Responsibility, which condemn assistance of the unauthorized practice of law, was reasonable. He cannot be considered insubordinate for refusing to follow his superior's order.

The judgment is reversed.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.