HAMMER, *Respondent—Cross-Petitioner,*
*v.*
OREGON STATE PENITENTIARY et al, *Petitioners.*

556 P2d 1348

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for petitioners. Also on the briefs were Lee Johnson, Attorney General, and John W. Burgess and Al J. Laue, Assistant Attorneys General, Salem.

*Henry H. Drummonds* of Kulongoski, Heid, Durham & Drummonds, Eugene, argued the cause and filed briefs for respondent/cross-petitioner.

HOWELL, J.

## HOWELL, J.

This is a review of a decision of the Court of Appeals, 23 Or App 743, 543 P2d 1094 (1975), which upheld the Public Employe Relations Board's (PERB) decision affirming Hammer's dismissal from public employment at the Oregon State Penitentiary. As in the companion case, *Tupper v. Fairview Hospital and Training Center,* decided today, 276 Or 657, 556 P2d 1340 (1976), the primary issue in this case involves the constitutional adequacy of the pretermination procedures followed by the state in dismissing a classified employee. The Court of Appeals held that the procedures employed violated the due process clause of the fourteenth amendment to the United States Constitution and concluded that Hammer was therefore entitled to an award of back wages for the period subsequent to his dismissal, but prior to the PERB hearing. Both the State Penitentiary and Hammer have petitioned this court for a review of that decision.

Prior to the dismissal in question, Hammer was employed by the Oregon State Penitentiary as a corrections officer. Hammer was hired in January 1972 as a classified employee. The record indicates that Hammer had a record of diabetes and hypertension as well as a sciatic nerve injury which he had received in Vietnam and which had resulted in a 60 per cent disability adjustment from the Veterans Administration. As a result of these problems, as well as a back injury which he suffered on the job, Hammer was frequently absent from work. While there was no evidence of malingering, PERB found that even excluding the absences due to his work related injury, Hammer was absent 143¾ hours in 1973 and 169 hours in 1974 *in addition to* all regular sick leave. PERB also found that employee absenteeism created serious staffing and scheduling problems at the penitentiary and that Hammer's attendance record was worse than that of any of the other corrections officers.

On January 14, 1974, after several previous counseling sessions, Hammer received a written reprimand which outlined his absence record and indicated that unless his record improved he would be subject to further disciplinary actions up to and including discharge. When his absences continued, on April 23, 1974, he was again reprimanded and cautioned that he could be subject to further disciplinary action unless his performance improved. On October 21, 1974, he was again counseled about his use of sick time. After he missed five more days in October and November, Hammer was notified on December 3, 1974, that he was suspended for 10 days without pay and then discharged effective December 16, 1974.

At Hammer's request, a post-termination hearing was held on January 22 and 23, 1975, before a hearings examiner from PERB, and on June 6, 1975, the Board issued an order upholding Hammer's dismissal. Hammer then sought judicial review of this order in the Court of Appeals.

The State Penitentiary contends that the Court of Appeals erred in holding that procedural due process requires a pretermination evidentiary hearing prior to the dismissal of a classified employee. The state argues that a post-termination hearing is sufficient so long as the employee receives notice that certain conduct could subject him to discharge, and he is given some informal opportunity to respond.

■ This issue is controlled by *Tupper v. Fairview Hospital, supra,* which holds that prior to his dismissal, a classified state employee must be notified of the charges against him as well as the proposed sanction, and he must also be given an opportunity to respond. *See also Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974).

■ The record indicates that Hammer was repeatedly counseled over a period of several months about excessive absences and the possible consequences.

However, there is no evidence that Hammer was notified prior to his termination that he was being charged with a continuation of these excessive absences, and that, as a result, the state was considering dismissal. Nor is there any evidence that Hammer was ever provided with an opportunity to rebut these charges and contest the proposed sanction prior to his termination. Therefore, we conclude that the procedures employed by the state in dismissing Hammer were constitutionally inadequate and that his termination on December 16, 1974, was invalid. Consequently, as in *Tupper,* we hold that Hammer is entitled to an award of back wages and other benefits, and that he should continue to receive these amounts until he is properly terminated.[1] In determining these amounts, the Board should offset any compensation and other benefits Hammer has received since his original termination.

The Court of Appeals is directed to order the Public Employe Relations Board to issue an order in conformance with this opinion.

Reversed and remanded.

**O'CONNELL, J.,** specially concurring.

I specially concur for the reasons stated in my separate opinion in *Tupper v. Fairview Hospital,* decided this day.

---

[1] There is one remaining legal issue in this case which was not before us in *Tupper.* Hammer contends that even a prolonged history of chronic absenteeism because of medical problems would be insufficient to establish the statutory "unfitness to render effective service," ORS 240.555, unless medical evidence of a continuing disability is also presented. We disagree. If, on remand, Hammer is again terminated, we believe that a finding of continued, persistent and unpredictable absenteeism over a period of several years would be sufficient to support a conclusion that the employee was not fit to render effective service.