TANZER, J.
Petitioner appeals from his dismissal by the superintendent of the State Police[1] pursuant to ORS 181.290 for insubordination.[2] A trial board, convened pursuant to statute and rule,[3] had found petitioner guilty of insubordination and recommended his removal from the Oregon State Police. Petitioner assigns as error several findings of fact and conclusions of law by the board.
In November 1976, the superintendent became aware of expressions of disparagement of him and dissatisfaction with the Oregon State Police made by several troopers at the Multnomah station to a recruit. The superintendent then directed Inspector Williams, third in command of the Oregon State Police, to conduct an investigation and recommend solutions to any problems which he found there. The inspector then interviewed petitioner and other troopers at the Multnomah station. At the conclusion of his investigation, the inspector recommended to the superintendent that petitioner and certain other troopers be transferred.
Acting upon the inspector’s recommendation, the superintendent, by letter dated December 8, 1976, ordered petitioner transferred from the Multnomah station to Roseburg, effective February 15, 1977. *[176] Petitioner, contending his transfer was in the nature of a disciplinary action, requested an opportunity to speak to the superintendent regarding the motivation for the transfer. The request was discouraged as a useless act.[4] Petitioner then refused to report for duty in Roseburg at the appointed date. He was subsequently cited for insubordination and relieved of duty without pay, pending a trial board hearing.
A trial board convened to hear the charges of insubordination. After a hearing at which petitioner appeared with counsel, the trial board found and recommended as follows:
"1. On December 8, 1976, the Superintendent of the Department of State Police instructed Captain V. L. Kezar, commanding officer of the district to which Trooper Richard T. Potts was assigned, to inform him that effective February 15, 1977, he was transferred from traffic assignment at the Multnomah Office to a traffic assignment at the Roseburg office.
"2. On December 9, 1976, Trooper Potts was personally informed of the Superintendent’s order by 2nd Lieutenant Edwin G. Schroeder, commanding officer of the Multnomah station, by reading and displaying such order to Trooper Potts.
"3. That order transferring Trooper Potts to Rose-burg was made for the purpose of improving morale at the Multnomah station.
"4. On or about February 14, 1977, Trooper Potts orally notified 2nd Lieutenant Schroeder that he would refuse to obey the order of transfer to Roseburg.
"5. On February 15, 1977, Trooper Potts failed to report to the Roseburg office.
*[177] "CONCLUSIONS
"1. The order of the Superintendent of December 8, 1976, transferring Trooper Potts to Roseburg was made pursuant to ORS 181.110 to carry out the purposes of the department and was a lawful order.
"2. Trooper Potts’ failure to appear for duty in Roseburg constitutes insubordination.”
The underlying theory of most of petitioner’s assignments of error is that his transfer to Roseburg was unlawful in that it was discipline imposed without notice and opportunity to rebut charges which allegedly precipitated the discipline.[5] Failure to obey an unlawful order is not necessarily insubordination, Stephens v. Dept. of State Police, 271 Or 390, 532 P2d 788 (1975); Whitney v. Employment Div., 280 Or 35, 569 P2d 1078 (1977).
Petitioner asserts that there was no substantial evidence to support the finding that the transfer was to improve morale. The superintendent testified that the possibility of serious morale problems at the Multnomah station was the reason for his direction to Inspector Williams to investigate and make recommendations and that he acted upon those recommendations. That is substantial evidence of the purpose of morale improvement.
Petitioner next asserts that there is no substantial evidence to show that the transfer would promote the *[178] efficiency of the Oregon State Police, that being the source of the superintendent’s authority under ORS 181.110 to allocate personnel geographically.[6] An administrative order must relate the facts and conclusions in light of the statutory purpose, McCann v. OLCC, 27 Or App 487, 556 P2d 973 rev den (1976), but it is not required to state the obvious. Morale problems obviously tend to interfere with the efficiency of any organization and the resolution of such problems promotes it. That assumption is implicit in Conclusion No. 1.
Petitioner next asserts that the conclusion that the order was "lawful” is based upon a failure by the board to consider whether it was disciplinary. He bases this upon some statements by the assistant attorney general at the hearing that the sole issue was whether petitioner obeyed the order and upon the sustaining of one of his objections made upon that ground. As to the former, the assistant attorney general repeatedly expressed his nonobjection to any questions petitioner’s lawyer wished to ask or evidence he wished to offer in his effort to prove that the order was punitive. In the one instance in which an objection was sustained, petitioner’s lawyer elicited the information he sought by another question.
It would serve no purpose to set out all the evidence. In sum, petitioner contended that the disobeyed order was issued for disciplinary reasons. He was allowed to attempt to prove his contention. He elicited evidence of some circumstances from which a fact finder might reasonably suspect that the order was unlawful due to its punitive purpose. It is clear that the board was cognizant of and rejected petitioner’s contention and evidence of disciplinary purpose when it found that the order "was made for the purpose of improving *[179] morale at the Multnomah station” and concluded that it was "lawful.”
Petitioner further contends that the hearing was constitutionally deficient because the board was not impartial. The risk of impartiality may be inherent in the disciplinary procedures of hierarchial or quasi-military organizations for which the legislature has not created an independent review mechanism such as the Employment Relations Board, see, Fritz v. OSP, 30 Or App 1117, 569 P2d 654 (1977), but we do not deal with it here because there was no challenge below to the composition of the board and thus nothing to review on appeal.
Affirmed.

This court has jurisdiction of the instant appeal under OES 183.480(2) and 183.482. School Dist. No. 48 v. Fair Dis. App. Bd., 14 Or App 35, 512 P2d 799 (1973). The jurisdictional issue was not raised in Stephens v. Dept. of State Police, 271 Or 390, 532 P2d 788 (1975), an appeal which went first to the circuit court.

 "The superintendent may remove members of the Oregon State Police in the manner prescribed in OES 181.290 to 181.350 for * * * insubordination * * *.” OES 181.290.

OES 181.310; Department of State Police Manual, Art V, § 5 provides in relevant part:
"* * * When convened, the Board shall conduct inquiry into the facts concerning the misconduct or violation and at the conclusion thereof shall make and reduce to writing for the superintendent its findingsof facts and any recommendations for disciplinary action against the member.”

 The record from the trial board reflects the following colloquy; questions by petitioner’s attorney, answers by the superintendent:
"Q Trooper Potts did request an interview with you after receiving a transfer order from you; is that correct?
"A Yes.
"Q Is it true that you indicated that you would see him but that no matter what the facts were, you weren’t going to change your mind?
"A I think that’s true.”
The defense has not urged, here or below, that the failure of petitioner to pursue a grievance procedure has controlling effect. Cf. Whitney v. Employment Div., 280 Or 35, 569 P2d 1078 (1977).

ORS 181.280 provides:
"The superintendent shall:
«* * * * *
"(2) Make rules and regulations for the discipline and control of the state police.”
Department of State Police Manual, Art V, § 6, provides:
"The superintendent, without the formal hearing provided for in ORS 181.300 and with or without recommendation of the commander of the district or division in which the member is assigned, and with or without the recommendation of a Board of Inquiry, may suspend from duly without pay, reassign, reduce the salary of, or demote any member of the department in the case of misconduct or violation of any directive, rule or regulation. The member will be given an opportunity to present any relevant evidence in his own behalf prior to the superintendent taking any such disciplinary action.”

ORS 181.110 provides:
"The superintendent shall distribute the state police throughout the various sections of the state where they will be most efficient in carrying out the purposes of the department to preserve the peace, to enforce the law and to prevent and detect crime.”