## JERRY HAMMER, *Respondent—Cross-Petitioner,*
### *v.*
## OREGON STATE PENITENTIARY et al, *Petitioners.*
### (CA 4900, SC 25640)
#### 583 P2d 1136

John W. Burgess, Assistant Attorney General, Salem, argued the cause for petitioners. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Henry H. Drummonds, of Kulongoski, Heid, Durham & Drummonds, Eugene, argued the cause and filed a brief for respondent/cross-petitioner.

Before Denecke, Chief Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

HOWELL, J.

## HOWELL, J.

This is an action challenging the constitutionality of procedures employed by the Oregon State Penitentiary in terminating plaintiff Hammer's employment as a corrections officer. In *Hammer v. Oregon State Penitentiary*, 276 Or 651, 556 P2d 1348 (1976) (hereinafter referred to as *Hammer I*), this court held that Hammer's dismissal was in violation of the due process clause of the fourteenth amendment to the United States Constitution because plaintiff was not given a pretermination notice of the charges against him nor an opportunity to rebut the charges. The United States Supreme Court granted the Penitentiary's writ of certiorari, vacated our judgment, and remanded the case to us for reconsideration in light of its recent decision in *Dixon v. Love*, 431 US 105, 97 S Ct 1723, 52 L Ed 2d 172 (1977). *Oregon State Penitentiary v. Hammer*,[1] 434 US 945, 98 S Ct 469, 54 L Ed 2d 306 (1977).

Because a complete statement of the facts can be found in our earlier decision, only a brief recital will be given here. Hammer was hired as a classified employee in January, 1972. During the next two years, a series of medical problems caused him to be absent frequently from his job. In January, 1974, Hammer received a written reprimand from the Penitentiary and a warning that continued absenteeism could result in disciplinary action up to and including discharge. The absences continued, and in April, 1974, a second reprimand was issued. Finally, on December 3, 1974, Hammer was notified that he was suspended for 10 days without pay, and he was discharged effective December 16, 1974.

---

[1] Mr. Justice Stevens dissented from the summary remand and was joined by Mr. Justice Brennan, Mr. Justice Stewart, and Mr. Justice Marshall. The dissenters argued that whatever the merits of our decision in *Hammer I*, it was not affected by *Dixon v. Love*, 431 US 105, 97 S Ct 1723, 52 L Ed 2d 172. *Oregon State Penitentiary v. Hammer*, 434 US 945, 98 S Ct 469, 54 L Ed 2d 306 (1977).

Hammer sought and obtained review of his dismissal before a hearings examiner from the Public Employe Relations Board. The Board upheld the dismissal, and Hammer sought judicial review. The Court of Appeals held that the procedures employed by the Penitentiary violated the due process clause of the fourteenth amendment to the United States Constitution. *Hammer v. Oregon State Penitentiary,* 23 Or App 743, 543 P2d 1094 (1975). This court agreed with the Court of Appeals but modified the remedy, holding that Hammer was entitled to an award of back pay and other benefits until he was dismissed properly.[2]

Subsequent to our decision in *Hammer I,* the United States Supreme Court decided *Dixon v. Love, supra. Dixon* involved an Illinois statute that authorized the Secretary of State to suspend or revoke a driver's license without preliminary hearing upon a showing that the driver had been repeatedly convicted of traffic offenses. Pursuant to this statute, the Secretary promulgated a rule that provided for automatic revocation if a driver's license was suspended three times within a 10-year period. Plaintiff's license was revoked under this regulation.

Plaintiff challenged the constitutionality of the Illinois statute in federal court, alleging that due process required a pre-revocation hearing to determine whether he fell within the statutory criteria. A three-judge district court upheld plaintiff's claim, but the United States Supreme Court reversed, holding that in light of the competing interests involved due process did not require a hearing prior to the license revocation.

We have reconsidered our decision in *Hammer I* in light of the *Dixon* case and conclude that the administrative action in *Dixon* differs significantly from the

---

[2]Since the *Dixon* case dealt only with the substantive question of whether a hearing was in fact required, and not with the issue of remedies, we see no reason to reconsider the propriety of the remedy we granted in *Hammer I,* i.e., that Hammer is entitled to back pay up until the time he was properly terminated. By agreement of the parties, Hammer resigned effective December 15, 1976.

action that occurred in *Hammer I.* Our conclusion is based on an application of the three-pronged analysis used by the Court in *Mathews v. Eldridge,* 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976):

> "* * * [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. * * *."
> *Id.* at 335, 96 S Ct at 903, 47 L Ed 2d at 33.

In *Dixon* the private interest was "the granted license to operate a motor vehicle." 431 US at 113, 97 S Ct at 1728, 52 L Ed 2d at 180. The Court found this interest to be important but not as important, for example, as welfare payments "on which the recipient may depend for his very subsistence." *Id.* Analogizing to the present case, it is not unreasonable to assume that the plaintiff was dependent upon his continued employment "for his very subsistence," and to conclude that his employment interest should be given some procedural safeguards. On a continuum, placing a driver's license and other "privileges" at one end and welfare payments and other "necessities" at the other end, employment seems to us to be closer to the "necessity" end of the continuum.[3] *See Arnett v.*

---

[3] It is worth noting that in *Dixon v. Love,* supra n.1, the Court was impressed by the fact that special provisions were made under Illinois law for holders of commercial licenses. In effect, license revocations that might affect one's livelihood were treated differently than ordinary revocations.

This discussion of the relative weight of private interest has overtones of the old "right-privilege" distinction that the United States Supreme Court purportedly now has discarded. *Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972). An analysis of that Court's recent decisions, however, indicates that the distinction may still be relevant "albeit in somewhat different verbal garb." *Arnett v. Kennedy,* 416 US 134, 211, 94 S Ct 1633, 1672, 40 L Ed 2d 15, 66 (1974) (Marshall, J., dissenting). *See Dixon v. Love, supra* n. 1.

*Kennedy,* 416 US 134, 94 S Ct 1633, 1670, 40 L Ed 2d 15, 67 (1974) (Marshall, J., dissenting).

■ The second factor listed in *Mathews,* the risk of error arising out of the procedures used, provides an even stronger basis on which to distinguish the present case from *Dixon.* As noted above, the license revocation in *Dixon* was automatic once three suspensions had occurred. Consequently, "* * * requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations." 431 US at 114, 97 S Ct at 1728, 52 L Ed 2d at 181. On the contrary, the decision in the present case was not automatic. Instead, it was necessary to consider a variety of factors, including the reasons for Hammer's absenteeism, the Penitentiary's ability to accommodate his absences, and the possibility that the absenteeism might be eliminated in the future. Particularly with respect to the third factor, we believe that Hammer should have been afforded an informal opportunity to respond to the charges prior to his dismissal. The counseling and reprimands that occurred during the previous 12 months were insufficient to satisfy the requirements of due process.

Finally, there was no "substantial public interest" in the summary termination of Hammer's employment comparable to the public interest in highway safety that compelled the summary license revocation in *Dixon.* Hammer's performance as a corrections officer was not under attack, only his absenteeism. To allow him an informal opportunity to respond to the charges against him prior to his termination would have posed no substantial threat to prison security.

For these reasons, we must agree with the plaintiff that a careful analysis of the factors present in *Dixon* actually supports our holding in *Hammer I,* rather than contradicts it. Had Hammer's superiors established a specific limit on absenteeism, beyond which additional absences would lead to automatic dismissal, this case would be much closer to *Dixon.*

■ We emphasize again that we do not hold that due process requires an evidentiary hearing prior to employment termination in cases such as this. We merely hold that Hammer was entitled to notice of the charges against him, the kind of sanctions being considered, and an opportunity to respond to the charges prior to his dismissal. In our view, such a requirement will impose a minimal burden on the state.[4]

As previously ordered, the Court of Appeals is directed to order the Public Employe Relations Board to issue an order in conformance with this opinion and the original decision of this court, *Hammer v. Oregon State Penitentiary, supra* 276 Or 651.

Plaintiff's request for attorney fees is denied for lack of statutory authority.

Reversed and remanded.

---

[4] In its brief on remand, the defendant also argues that a reversal of *Hammer I* is required by *Board of Curators of the University of Missouri v. Horowitz*, 435 US 78, 98 S Ct 948, 55 L Ed 2d 124 (1978). In that case, the Court held that academic evaluations and dismissals based upon such evaluations are not subject to the same due process requirements as those controlling disciplinary proceedings. From this, defendant argues that decisions concerning "competency" in employment are governed by a different standard than decisions concerning "misconduct." Even if we assume that the Penitentiary's evaluation of Hammer's work is analogous to the University of Missouri's evaluation of Horowitz's academic performance, the fact remains that Hammer was afforded even less procedural protection in his case than was Horowitz. Horowitz was given an opportunity to "appeal" the University's decision not to let her graduate by performing clinical work before a group of practicing physicians. 434 US at 81, 98 S Ct at 950, 55 L Ed 2d at 129. Conversely, Hammer was given no opportunity to present his case prior to the time the termination decision was made. As we have already noted, we do not consider the counseling and reprimands that Hammer received during the months preceding his termination to be adequate satisfaction of the due process requirements of notice and opportunity to be heard.