ASHMAN, *Petitioner,*
*v.*
CHILDREN'S SERVICES DIVISION, *Respondent.*
(Nos. 562, 579, CA 10326)
588 P2d 665

Gary N. Ashman, Portland, filed the brief pro se for petitioner.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and William F. Hoelscher, Assistant Attorney General, Salem, filed the brief for respondents.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

In this petition for judicial review, petitioner challenges an order of the Employment Relations Board (ERB) affirming his suspension and dismissal from his position in the classified service with Children's Services Division (CSD). The ground for dismissal was insubordination under ORS 240.555[1] for failure to comply with written instructions to report to a new work assignment in Portland. Petitioner assigns as error several conclusions of law made by the ERB. We reverse and remand.

Petitioner began working at CSD in December, 1973, as a Public Information Officer in an Informational Representative 3 classification. On August 16, 1976, J. N. Peet was appointed as the new administrator of CSD. Peet had expressed a desire to appoint his own Information Officer when he assumed the position as administrator. Accordingly, as part of the organizational changes accompanying Peet's appointment, petitioner was transferred from his duties of communicating with the news media to a position with the Staff Development Unit in Salem, preparing training aids and other communication material for internal agency staff development. On the same day, Jayne Carrol assumed the vacant Public Information Officer position formerly held by petitioner.

On October 14, 1976, petitioner was asked by CSD's personnel manager if he would consider changing his classification to Program Executive I. Petitioner declined the reclassification because it was not his field of interest, and because he felt it offered less chance for promotion.

In December, 1976, petitioner applied for the newly created position of Manager, Office of Communica-

---

[1] ORS 240.555(1) provides that:

"* * * the appointing authority in any division of the service may suspend * * * or dismiss an employe thereof for misconduct, inefficiency, incompetence, insubordination, indolence, malfeasance or other unfitness to render effective service."

tions in CSD. Jayne Carrol was selected to fill the new position.

On January 7, 1977, petitioner was notified by CSD that his position was being reclassified upward to a Program Executive 2 position as a Regional Trainer and that he was being transferred from Salem to Portland. Petitioner was asked to report to the Portland office on March 1. He declined to accept the transfer order and so informed CSD by letter dated February 14, 1977. Petitioner did not report to the Program Executive 2 position in Portland on March 1, and was placed on leave-without-pay status as of that date.[2]

Pre-termination procedures were then initiated by CSD as required by Personnel Division Rule 81-600.[3] An investigative team was formed and a hearing held on March 5. The team found that petitioner failed to comply with the written instructions to report to Portland. On April 11, petitioner was notified by CSD that he was being suspended without pay and dismissed for insubordination under ORS 240.555, effective April 26.

Petitioner filed an appeal with the ERB under ORS 240.560[4] and hearings were held before the ERB

---

[2] Ashman appealed the suspension action to the ERB in case No. 572. Case 572 was combined with Case No. 579, Ashman's appeal from his suspension and dismissal, for hearing purposes before the ERB. The cases remain combined on this petition for judicial review.

[3] *See* pages 8-9, *infra.*

[4] ORS 240.560 states:

"(1) A regular employe who is reduced, dismissed, suspended or demoted, shall have the right to appeal to the board not later than 10 days after the effective date of such reduction, dismissal, suspension or demotion. Such appeal shall be in writing and shall be heard by the board within 30 days after its receipt. The board shall furnish the division of the service concerned with a copy of the appeal in advance of the hearing.

"(2) The hearing shall be conducted as provided for a contested case in ORS 183.310 to 183.500.

"(3) If the board finds that the action complained of was taken by the appointing authority for any political, religious or racial reasons, or

hearings examiner in June and July, 1977. The hearings examiner issued his proposed findings and order which were substantially adopted by the Board in its opinion issued January 4, 1978. The Board found that "the suspension and dismissal were made in good faith and for cause" and issued its order affirming the suspension and dismissal for insubordination. Petitioner seeks judicial review of that order under ORS 240.563.[5]

Petitioner makes several assignments of error directed in part at the constitutional adequacy of the predismissal hearing and in part at the lack of substantial evidence to support the ERB's findings that the transfer order was legal and that the dismissal was in good faith and for cause. The central theory underlying each of petitioner's assignments of error is that his dismissal for refusal to transfer to Portland in the reclassified position was the final step in a conspiratorial series of actions taken by CSD with the design of placing a favored employee into petitioner's former position as Information Officer without complying with the State Merit System laws, and penalizing petitioner for his opposition to this course of conduct. Petitioner claims that in transferring him from the Information Officer position and in appointing Jayne Carroll to that position and later to the

because of sex, marital status or age, the employe shall be reinstated to his position and shall not suffer any loss in pay.

"(4) In all other cases, if the board finds that the action was not taken in good faith for cause, it shall order the immediate reinstatement and the reemployment of the employe in his position without the loss of pay. The board in lieu of affirming the action, may modify it by directing a suspension without pay for a given period, and a subsequent restoration to duty, or a demotion in classification, grade or pay. The findings and order of the board shall be certified in writing to the appointing authority and shall be forthwith put into effect by the appointing authority.

"(5) Reinstatement or settlement agreements entered into either prior to or subsequent to hearing as provided in this section shall be subject to the provisions of subsection (3) of ORS 657.315."

[5] ORS 240.563 provides:

"Judicial review of orders under ORS 240.560 shall be as provided in ORS 183.310 to 183.500."

position as Manager of Office of Communications, CSD shifted funding from one program to another, created a new position not specifically provided for in the classification of Information Representative 3, and reclassified positions specifically provided for in the budget without approval of the legislative review agency, all in violation of ORS 291.371[6] and a series of merit system provisions. These statutory violations,[7] argues petitioner, render illegal CSD's order that he report to work as a Regional Trainer, justify his refusal to do so, and are evidence that the final dismissal order was not in good faith and for cause.

Petitioner's first complaint is with the constitutional adequacy of the Rule 81-600 hearing he received prior to dismissal. Rule 81-600 states:

"A pre-dismissal investigation shall be conducted with regard to a regular status employe against whom a charge is presented which potentially justifies dismissal for one of the causes set forth by ORS 240.555. The appointing authority shall provide notification to such an employe of the following: That potential cause for employe's dismissal has arisen; the known complaints, facts and charges; that an investigation team has been appointed to assess the validity of such complaints, facts and charges; and *that the employe will be afforded an opportunity to refute such charges or present mitigating*

---

[6] ORS 291.371 provides:

"(1) As used in this section, "legislative review agency" means the Joint Committee on Ways and Means during the period when the Legislative Assembly is in session and the Emergency Board during the interim period between sessions."

"(2) *Prior to making any changes in a salary plan, establishing any new positions specifically not provided for in the budget of the affected agency or reclassifying any positions specifically provided for in the budget of the affected agency, the Executive Department shall submit the proposed changes to the legislative review agency. The proposed change shall only be approved and take effect if the legislative review agency finds that the affected agency can finance the proposed change within the limits of its biennial budget and that the proposed change conforms to legislatively approved salary policies. * * *"* (Emphasis added.)

[7] Petitioner claims the actions of CSD involved violations of at least four merit system provisions: ORS 240.305, 240.333, 240.530, and 240.545.

*circumstances at an informal meeting with the investigation team* at a time and date set forth in the notice, which meeting date shall not be less than five working days after the notification is delivered to the employe. Such notification shall include a copy of this rule.

"At the discretion of the appointing authority, the employe may be suspended in accordance with Rule 81-100 with or without pay or be allowed to continue work during the period of investigation.

"The appointing authority shall appoint to the investigation team at least two employes excluded from collective bargaining, none of whom shall be the immediate supervisor of the employe being investigated. The duty of the team shall be to make inquiries to assess the charges presented. During *the investigation the employe shall, at the employe's option, be permitted to refute the charges, present mitigating circumstances and have an official representative or witness present.* The investigation team shall render its findings in writing to the appointing authority and the employe.

"The employe shall be given an opportunity to present a written reply to those findings to the appointing authority.

"Should the appointing authority find sufficient cause for dismissal, notice shall be provided as required by Rules 81-100 and 81-500." (Emphasis added.)

At the predismissal hearing, the investigation team limited its inquiry to "whether or not Ashman reported to the job as assigned in Portland." The attorney for CSD stipulated at the later ERB hearing that he had advised potential witnesses at the predismissal hearing that neither they nor Ashman would be permitted to discuss issues concerning the validity of CSD's personnel actions or the alleged statutory violations. Petitioner insists that he was entitled to bring in evidence about the classification and funding of positions without legislative authority and the manipulation of the merit system provisions. Because the scope of the inquiry was limited to whether he reported to work as a Regional Trainer, petitioner argues he was effectively denied his right to refute the charges against him, in violation of the due process rights

guaranteed him by Rule 81-600 and *Tupper v. Fairview Hospital and Training Center,* 276 Or 657, 556 P2d 1340 (1976).

■ The ERB correctly held that the pretermination hearing given petitioner satisfied the requirements of *Tupper* and, we would add, the Oregon Supreme Court's more recent decision in *Hammer v. OSP.*[8] All that *Tupper* and *Hammer* require is that an employee receive notice of the charges, notice of the possible sanctions and, at minimum, an informal opportunity to respond to the charges prior to dismissal. *Hammer,* 283 Or at 375; *Tupper,* 276 Or at 665. In its simplest form, the employee is to be informed of the charges and given the chance to say "I did not do that." Petitioner was given this opportunity, and thus afforded constitutional due process under *Hammer* and *Tupper.*

■ The pretermination hearing, however, may not have satisfied the requirements of Rule 81-600. Arguably, by affording the employee an opportunity to "refute the charges, present mitigating circumstances, and have an official representative or witness present," Rule 81-600 requires something more than what is required by *Hammer* and *Tupper.* However, we are not called upon to decide today precisely what form the 81-600 hearing should take because even if, as petitioner asserts, he should have been given the opportunity under Rule 81-600 to discuss issues concerning the validity of CSD's personnel actions or the alleged statutory violations at the predismissal hearing, he was given this opportunity at the postdismissal ERB hearing. Mindful that the pretermination hearing was *constitutionally* adequate, we fail to see how the defects in procedure, if any, under Rule 81-600 prejudiced defendant when he was accorded a full evidentiary hearing before ERB after his dismissal. *See, Arnett v. Kennedy,* 416 US 134, 170, 40 L Ed 2d 15, 42 (1974). A procedural defect which does not

---

[8] 283 Or 369, — P2d —— (1978).

prejudice substantial rights of petitioner is not cause for reversal. ORS 183.482(8)(a).[9]

■■ Petitioner's next challenge is directed at ERB's determination as to the validity of both the transfer and dismissal orders. The charge against petitioner was insubordination for failure to obey an order. There is no doubt here that petitioner refused to obey the order. That does not end the inquiry, however, because there are some orders that it is permissible to disobey. For example, it is frequently held that an employee need not obey an order that is immoral or unsafe.[10] Neither will an employee be dismissed for insubordination for disobeying an order that the employer was not entitled to give and have obeyed. *Stephens v. Dept. of State Police,* 271 Or 390, 532 P2d 788 (1975). *See also Whitney v. Employment Division,* 280 Or 35, 569 P2d 1075 (1977). And, in some instances, it is permissible to disobey an order not given in good faith. *See, Potts v. Dept. of State Police,* 31 Or App 173, 570 P2d 385 (1977).

Because there has been no claim that the transfer order was either immoral or unsafe, we now turn to the contentions made by petitioner with regard to the lawfulness of the order. Petitioner claimed at the ERB hearing that the transfer order was illegal because (1) it was not for the good of the state service as required by Personnel Division Rule 46-600[11] (a rule of the

[9] ORS 183.482(8)(a) limits the scope of our authority upon judicial review of an agency order by providing:

"(8) The court may affirm, reverse or remand the order. *The court shall reverse or remand the order only if it finds:*

"(a) The order to be unlawful in substance or procedure *but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby * * *.* (Emphasis added.)

[10] *Quinn Wire & Iron Works,* 44 Labor Arbitration 1016 (1965); *Fitchburg Paper Co.,* 47 Labor Arbitration 349 (1966).

[11] Personnel Division Rule 46-600 provides:

"Appointing authorities shall give an employe 45 days notice of geographic transfer if the transfer is being made without the consent of the employe. Upon written request of the employe, the administrator

Personnel Division, not the ERB[12]) and (2) it was part of a series of actions taken by CSD with the design of placing another employee in petitioner's former position, all of which involved violations of the state merit system provisions,[13] and of penalizing him for opposing such actions. That is, petitioner claimed the action dismissing him was not taken in good faith. Our inquiry is whether there is substantial evidence to support ERB's findings of fact on these issues and whether the findings are properly connected with the conclusions of law drawn by the Board concerning the validity of the Order. ORS 183.482(8)(a); *See Home Plate Inc. v. OLCC,* 20 Or App 188, 530 P2d 862 (1975).

The ERB acknowledged petitioner's two-part contention as to the illegality of the transfer order. In its conclusions of law, the ERB stated:

"This Board has held that an employe is not bound to obey an illegal, immoral or unsafe order. The reclassification and relocation of Appellant's position to the Multnomah Office was legal. To transfer Appellant into a reclassified and relocated position was permissible. There is no evidence that the transfer was unsafe or immoral. The Appellant presented testimony by individuals in C.S.D. who knew Appellant, his work, and what was generally required of a Regional Trainer. In their opinions Appellant was not qualified. However, those in C.S.D. and the Personnel Division who have the responsibility under law and rule to make such decisions, agreed that the Trainer position was needed in the Multnomah County Regional Office and that Appellant

---

shall investigate to determine if the transfer is being made for any reason other than the good of the service. The administrator shall provide the requesting employe a written statement of findings and the reasons for such findings. Should the administrator's findings show cause of transfer to be for any reason other than the good of the service the transferred employe shall be reinstated in the original position and this action shall constitute a rescinded transfer."

[12] While we are not certain why, it appears that ERB has adopted the "for the good of the service" language in Personnel Division Rule 46-600 as the appropriate standard for conducting the investigation of the facts surrounding petitioner's transfer. We express no opinion with respect to the validity of this approach.

[13] *See* note 7 *supra.*

[ 874 ]

had the qualifications to be a Regional Trainer. This Board will not substitute its judgment on these matters. The facts do not warrant the conclusion that the transfer of March 1, 1977, was not for the good of the service."

The ERB then concluded that "the suspension and dismissal were made in good faith and for cause."

The conclusion that the transfer order was for the good of state service is supported by the ERB's findings of fact, which in turn we find to be supported by substantial evidence. ERB's opinion, however, is unresponsive to petitioner's additional concern about the legality of the transfer order—the question of bad faith. From the very beginning, petitioner's notice of appeal to ERB from his dismissal identified "bad faith" as one of his grounds for appeal:

"The actions of CSD were not taken in good faith and [petitioner's] discharge was not for good cause. The stated reason for suspension and discharge is insubordination for failure to report to a new work station. CSD's attempt to base its disciplinary action on insubordination is a subterfuge to cover up an illegal course of conduct by J. N. Peet, Administrator of CSD, designed to fraudulently manipulate Oregon State Merit System laws and violate Oregon State Financial Administration laws * * *."[14]

[14] The charge of bad faith was made even more clear by a subsequent letter, written to ERB by petitioner's attorney, in which the attorney pinpointed the statutes which had allegedly been violated. The letter stated:

"* * * [I]t has also become evident that the respondent's actions in transferring [petitioner] to Portland and bringing the insubordination charge upon his refusal to transfer, were taken in violation of ERB 16-310 which states:

"No person shall interfere with, intimidate, restrain, coerce or discriminate against any other person because of the other person's *prospective* or actual participation as an appellant or witness in any hearing, investigation or other action conducted by the board. (Emphasis added.)

"Respondent knew Mr. Ashman had contacted an attorney about his problems with CSD and was contemplating some action to correct the inequitable treatment he had received when the transfer ultimatum was given him. CSD made no attempt to find suitable employment for him after he notified CSD officials of his inability to accept the transfer due to, among other things, his lack of background in staff training and development."

[ 875 ]

■■ It could be argued that ERB's conclusion of law that the transfer was "for the good of the service" is the equivalent of a conclusion that the transfer order was given in good faith. This might be so under Personnel Division Rule 46-600 which requires the administrator to rescind the transfer order if it is found that the transfer was *for any reason other than* the good of the service. We interpret the phrase "for any reason other than the good of the service" as meaning that the transfer must have been wholly for the good of the service or otherwise it is improper. But even if we construe ERB's opinion as having made the requisite conclusion of law as to the good faith issue, ERB's order and opinion is still defective. Conclusions of law must be supported by specific findings of fact which must in turn be supported by substantial evidence. Here there are no such findings of fact. We find nothing in ERB's opinion that addresses the state of mind of the officials responsible for the transfer order—the appropriate focus when the charge is bad faith. Absent findings on this question, the conclusion is unsupported and cannot stand. *See Home Plate v. OLCC, supra.* In sum, the issue of "bad faith" was not properly addressed by the ERB. The issue is a relevant inquiry on two different levels—the giving of the transfer order *and* decision to dismiss petitioner: (1) Was the order to transfer to Portland made in bad faith, thereby rendering it illegal? If it was, petitioner was entitled to disobey it, and cannot have been insubordinate in doing so, and (2) even if the order to transfer was legal, was the decision to dismiss petitioner as a result of his disobedience made in bad faith? If so, the dismissal was invalid under ORS 240.555. *Thompson v. Secretary of State,* 19 Or App 74, 26 P2d 621 (1974). It follows that the case must be remanded to ERB to address these issues.[15]

---

[15] Were we required to reach the issue we note that ERB's opinion is additionally defective in that its conclusion that the dismissal order was given in good faith is not grounded on any articulated underlying facts. *See Home Plate Inc. v. OLCC, supra.*

■ We do not necessarily deem it essential for the ERB to hold another hearing to examine the issue of bad faith. Although petitioner claims on appeal that he was not permitted to introduce evidence on that issue, the record indicates that the hearings officer admitted into the record evidence offered by petitioner relevant to the issue of bad faith. Our concern is that the ERB make appropriate findings of fact and conclusions of law with regard to that issue. This it may be able to do by an examination of the record.[16]

Reversed and remanded.

---

[16] Much of ERB's opinion and much of the argument presented by the state on appeal focused on the concept of "work now, grieve later." We agree that the doctrine has its place in labor disputes. It would certainly have been applicable had petitioner's sole contention been that the appointments of Jayne Carroll were improper because of violation of statute or rule. However where, as here, defendant's contention is that an entire course of conduct was taken in bad faith for the purpose of getting rid of him and particularly where, as here, it is claimed that the ultimate decision to discharge him was not made in good faith in any event, the concept of "work now, grieve later" is inapplicable.